IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL ALPERIN, et al., | No. C-99-04941 MMC |
| Plaintiffs, | **ORDER GRANTING DEFENDANT OFM'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT** |
| v. | |
| VATICAN BANK, et al., | (Docket No. 270) |
| Defendants. | |

Before the Court is the motion, filed March 20, 2006 by defendant Order of Friars Minor ("OFM"), to dismiss plaintiffs' Fourth Amended Complaint on the ground of lack of standing. Plaintiffs have filed opposition to the motion; OFM has filed a reply.[1] Having considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

## BACKGROUND

Plaintiffs consist of both individual and organizational plaintiffs who bring the above-titled action on behalf of themselves and a purported class of all Serbs, Jews, Roma, and

---

[1] Following the completion of briefing, plaintiffs filed a motion requesting the Court delay ruling on OFM's motion to dismiss, for the purpose of allowing the remaining parties to exchange initial disclosures. (See Motion for Leave to File Motion for Stay of OFM's Motion to Dismiss to Allow Remaining Parties to Comply with FRCP 26(a)(1), filed December 31, 2007.) Plaintiffs have failed to show good cause for such delay, however, for the reason that OFM's motion is directed at the adequacy of the pleadings, and, accordingly, plaintiffs' request is hereby denied.

former Soviet Union citizens and their heirs and beneficiaries, all of whom are alleged to have suffered monetary and/or property losses assertedly caused by the Independent State of Croatia ("NDH") during the period April 1941 through May 1945. (See Fourth Amended Complaint ("4AC") ¶¶ 1, 45-73.) Plaintiff alleges that during such time period, the NDH was led by Ante Pavelic and his Ustasha Party (collectively, "Ustasha Regime"), who also controlled parts of Bosnia-Hercegovina, Serbia, and militarily-occupied sectors of the former Soviet Union. (See id. ¶ 3.)

The defendants are the Istituto Per Le Opere Di Religione ("IOR") and OFM. (See id. ¶¶ 74-85.) Plaintiffs allege that OFM's administrative structure is divided into geographically-based provinces, including "several Croatian Franciscan provinces." (See id. ¶¶ 79, 81.) The Croatian branch of OFM, plaintiffs allege, maintains facilities in Chicago "known as the Croatian Franciscan Custody of the Holy Family." (See id. ¶ 83.) Plaintiffs further allege that OFM "coordinated, operated and managed the affairs of the Croatian Confraternity of the College of San Girolamo Degli Illirici" ("Croatian Confraternity") from 1946 through 1952. (See id. ¶ 85.)

According to plaintiffs, defendants "accepted, concealed, hypothecated, laundered, retained, converted and profited from assets looted by the Ustasha Regime during April 1941 through May 1945 and deposited in, or converted, concealed, hypothecated, trafficked, credited, pledged, exchanged, laundered or liquidated through, the IOR, and OFM after the demise of the NDH in May 1945." (See id. ¶ 8.) In that regard, plaintiffs allege, property was taken by the Ustasha Regime and added to the Ustasha Treasury, (see id. ¶¶ 41-44), after which Croatian Franciscans and the Croatian Confraternity assisted the Ustasha Regime in smuggling and laundering the Ustasha Treasury outside Croatia, (see id. ¶¶ 142, 144). Thereafter, according to plaintiffs, a portion of the Ustasha Treasury was "transferred to Vatican City and the College of San Girolamo Degli Illirici and then to the IOR for conversion." (See id. ¶ 154.) Plaintiffs further allege that IOR and OFM converted jewels, gold coins, and gold jewelry from the Ustasha Treasury after the end of World War II and thereafter transferred such assets to Swiss accounts. (See id. ¶ 159.)

1 Additionally, plaintiffs allege, "the [Croatian] Confraternity received and retained a portion of
2 the Ustasha Treasury post war for its work with the Ustasha exiles." (See id. ¶ 145.)
3 Lastly, plaintiffs allege, OFM, along with the Croatian Franciscan Custody of Chicago and
4 the Croatian Confraternity, all profited from their access to Ustasha Treasury funds. (See
5 id. ¶ 148.)

Plaintiffs assert causes of action for an accounting, conversion, unjust enrichment, and restitution, as well as unspecified violations of international law. (See id. ¶¶ 182-201.)

**LEGAL STANDARD**

A motion to dismiss for lack of standing is brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) . . . ."). A motion to dismiss under Rule 12(b)(1) can be brought as either a "facial" or a "factual" attack. See id. Where, as here, the Court considers a facial attack on standing, (see Motion at 3:21-22), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." See Warth v. Seldin, 422 U.S. 490, 501 (1975) (citation omitted). The party invoking federal jurisdiction bears the burden of establishing the elements of standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

**DISCUSSION**

To establish standing, certain constitutional and prudential considerations must be met. See Lujan, 504 U.S. at 560. The minimum constitutional requirements include (1) an injury in fact suffered by the plaintiff, (2) a causal connection between the injury and the conduct of the defendant, and (3) redressability. See id. at 560-61. "[P]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Elk Grove Unified Sch. Dist. v. Newdow, 542

U.S. 1, 12 (2004) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

A.  **Constitutional Requirements for Individual Plaintiffs' Standing**

   1.  **Injury in Fact**

OFM first argues that nineteen of the twenty-four individual plaintiffs fail to allege they personally suffered property loss and, consequently, have failed to allege the requisite "injury in fact."[2] An "injury in fact" is one that is "concrete and particularized" and "actual or imminent." See Lujan, 504 U.S. at 560. An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." See id. at 561 n.1.

At the outset, OFM argues that plaintiffs Nevenka Vukasovic Malinowski, Eli Rotem, and Milorad Skoric have failed to allege any property loss. OFM is correct that two of these three plaintiffs have failed to allege any property loss, and accordingly have not adequately alleged an injury in fact. In particular, although plaintiff Malinowski alleges that "[a]ll Serb property in the village was looted," she fails to allege that any of her own or her family's personal property was among the property looted, (see 4AC ¶ 55); similarly, plaintiff Skoric merely alleges that "the whole village had been pillaged," without alleging any personal loss, (see id. ¶ 57). Plaintiff Rotem, however, does allege that "[a]ll the family property in Zagreb was forfeited and taken by the Ustasha." (See id. ¶ 56.) Thus only two plaintiffs — Malinowski and Skoric — have failed to allege any property loss; Rotem will be included with the seventeen plaintiffs discussed below.

Each of these seventeen plaintiffs alleges that the property of certain family members or relatives was looted. (See 4AC ¶¶ 49-54, 56, 58, 60-68.)[3] To adequately plead standing, such plaintiffs must allege they are heirs or legatees of the decedents.

---

[2] OFM concedes that five of the twenty-four plaintiffs, who allege that their own personal property was looted, have adequately alleged an injury in fact. (See Motion at 4:27-28.) The five plaintiffs are Emil Alperin, Jewgenija Romanova, Maria Dankewitsch, Vladimir Morgunov, and Fred Zlatko Harris. (See 4AC ¶¶ 45-48, 59.)

[3] Although the Fourth Amended Complaint states that "[a]ll individual plaintiffs allege that their property was taken by the Ustasha Regime," (see 4AC ¶ 41), the complaint's allegations with respect to each individual plaintiff make it clear that not all plaintiffs allege they personally suffered property loss.

4

See, e.g., Bodner v. Paribas, 114 F. Supp. 2d 117, 121, 126 (E.D.N.Y. 2000) (holding plaintiffs, who were family members of Holocaust victims, had standing to challenge theft of said victims' assets because plaintiffs were "statutory distributees of the decedents' estates" under French and New York law); see also Webb v. City of Dallas, 314 F.3d 787, 791 (5th Cir. 2002) (holding plaintiffs sufficiently pleaded injury in fact by alleging they were heirs under deed in dispute). Two of the seventeen plaintiffs, Vladamir Brodich and Vladan Celebonovic, allege they are the sole heirs of the decedents whose property was looted, (see 4AC ¶¶ 49, 65); the remaining fifteen plaintiffs, however, do not allege they are heirs or legatees, or otherwise legally entitled, to the assertedly stolen property.

In sum, seven plaintiffs — Emil Alperin, Jewgenija Romanova, Maria Dankewitsch, Vladimir Morgunov, Fred Zlatko Harris, Vladimir Brodich, and Vladan Celebonovic — have adequately alleged an injury in fact, (see id. ¶¶ 45-49, 59, 65), while seventeen plaintiffs — William Dorich, Igor Najfeld, Lizabeth Lalich, Mladen Djuricich, Robert Predrag Gakovich, Nevenka Vukasovic Malinowski, Eli Rotem, Milorad Skoric, Veljko Miljus, Milja Conger, Allen Dolfi Herskovich, Bogdan Kljaic, David Levy, Zdenka Baum Ruchwarger-Levy, Desa Tomasevic Wakeman, Daniel Pyevich, and Koviljka Popovic — have failed to allege an injury in fact, (see id. ¶¶ 50-58, 60-64, 66-68).

### 2. Causal Connection

OFM next argues that all of the plaintiffs have failed to adequately allege the requisite causal connection because the alleged property loss is alleged to have resulted solely from the independent action of third parties, and plaintiffs have failed to allege any connection between those third parties and OFM. For purposes of standing, a causal connection must exist "between the injury and the conduct complained of," and the asserted injury must be "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" See Lujan, 504 U.S. at 560-61 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976) (alteration in original)).

Here, OFM argues, plaintiffs have failed to allege "OFM created the [Ustasha]

Treasury in the first instance or looted the private property that became part of the Treasury." (See Motion at 6:23-24.) The causes of action against OFM rely, however, on OFM's alleged receipt of looted assets from the Ustasha Treasury, (see 4AC ¶¶ 12-13), and plaintiffs expressly state in their opposition that they are not alleging that OFM took the property directly from plaintiffs, (see Opp. at 5:27-6:3).

OFM next argues that four plaintiffs have failed to allege their property was looted by the Ustasha Regime and added to the Ustasha Treasury. In particular, OFM argues, plaintiffs Emil Alperin, Jewgenija Romanova, Maria Dankewitsch, and Vladimir Morgunov allege that "Croatian troops" in the Ukraine or "Croatian Naval personnel" looted their property, not the Ustasha Regime. (See 4AC ¶¶ 45-48.)[4] Although the complaint also contains general allegations that the Ustasha Regime contributed armed forces to fight in the Soviet Union alongside those of Germany, that "Croatian troops assisted the German occupiers of Ukraine, Belarus, and Russia and participated in their systematic plunder and looting," and that "[t]he Ustasha Treasury contained loot from the former Soviet Union," (see id. ¶¶ 108-117), the inclusion of such general allegations is insufficient to allege that the property of any of the above four plaintiffs was taken by the Ustasha Regime, given to the Ustasha Regime, or otherwise became part of the Ustasha Treasury.

OFM further argues that, to the extent plaintiffs have alleged any conduct on the part of the Ustasha, any wrongful assistance to the Ustasha is alleged to have been provided by the Croatian Franciscans and the Croatian Confraternity, and that plaintiffs fail to adequately allege facts suggesting OFM can be held liable for the acts of such entities. Although plaintiffs allege that "OFM assisted Ustasha war criminals to evade justice by smuggling and laundering [the] loot," (see id. ¶ 141), plaintiffs define "OFM" as

---

[4] The Fourth Amended Complaint also includes the allegation, "All individual plaintiffs allege that their property was taken by the Ustasha Regime which maintained a systematic procedure of looting and plunder from its victims in which confiscated property was deposited in central accounts in Zagreb or was auctioned or sold first and the proceeds sent to the Ustasha Treasury." (See 4AC ¶ 41.) This general allegation, however, is based on more specific allegations, which describe the property each plaintiff alleges to have been looted and the circumstances under which it was taken. (See 4AC ¶¶ 45-68.)

6

encompassing OFM, the Croatian Franciscans, and the Croatian Confraternity, (see id. ¶ 4). Such allegation, standing alone, leaves unspecified the entity or entities alleged to have committed the above-described acts. Further, from other allegations in the complaint,[5] as well as from plaintiffs' opposition to the instant motion,[6] it is clear that the Croatian Franciscans and Croatian Confraternity are the alleged actors.

To connect OFM to the Croatian Confraternity, plaintiffs allege OFM "coordinated, operated, and managed the affairs of the Croatian Confraternity of the College of San Girolamo Degli Illirici 1946-1952 through its Chief Economist and General Definitor Dominic Mandic who was also the former Franciscan Provincial of Hercegovina." (See 4AC ¶ 85.) If plaintiffs are relying on an agency, alter ego, or other relationship between OFM and the Croatian Confraternity, plaintiffs have not alleged such, nor have they, in their opposition, identified any theory on which OFM's asserted liability for such acts rests.

To connect OFM to the Croatian Franciscans, plaintiffs allege that "OFM's administrative structure is divided in geographically based Provinces," with the Croatian branch consisting of five provinces. (See id. ¶ 81-82.) Relying on Watson v. Jones, 80 U.S. 679, 722-23 (1871), plaintiffs contend that in such a religious "hierarchy" there exist "superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." (See Opp. at 9:2-8). Plaintiff's argument is unpersuasive. First, although plaintiffs allege that OFM is now administratively divided into provinces, (see 4AC ¶¶ 81-82), plaintiffs have failed to allege the nature of OFM's structure during the relevant time

---

[5] The complaint alleges, "Upon the demise of the Ustasha Regime in May 1945, a substantial portion of the Ustasha Treasury was transferred to [the Ustasha's Regime's] Croatian Franciscan allies for transport to Rome and elsewhere where Croatian Franciscansسیmpathetic to the Ustasha were based." (See 4AC ¶ 142.) The complaint further alleges the Croatian Confraternity, among others, "use[d] funds from the Ustasha Treasury," (see id. ¶ 144), and "received and retained a portion of the Ustasha Treasury post war," (see id. ¶ 145).

[6] Plaintiffs argue that "OFM provided the direct means of laundering the Ustasha Treasury through the Croatian Confraternity at San Girolamo and was the lynchpin in the entire scheme [4AC ¶ 141-148]." (See Opp. at 11:4-6) (emphasis added.)

period.  Moreover, plaintiffs' allegation that OFM is a hierarchical religious organization does not necessarily lead to the conclusion that it is a single entity liable for all actions of its provinces.  As the Supreme Court recognized in Watson, there are multiple ways in which a religious organization may be structured, including one in which a "religious congregation is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority."  See Watson, 80 U.S. at 722-23.  Consequently, plaintiffs' allegations as to OFM's structure are insufficient to plead OFM's liability based on acts taken by the Croatian Franciscans.

In short, plaintiffs have failed to adequately allege the requisite causal connection between OFM and the acts alleged to have been committed by either the Croatian Franciscans or the Croatian Confraternity.[7]  Additionally, as noted above, plaintiffs Emil Alperin, Jewgenija Romanova, Maria Dankewitsch, and Vladimir Morgunov have failed to adequately allege their property became part of the Ustasha Treasury.

### 3. Redressability

OFM further argues that the equitable relief plaintiffs seek, specifically, an accounting and restitution, is "not substantially likely to ameliorate the property losses plaintiffs allege," and thus that plaintiffs, for purposes of standing, have failed to meet the requirement of redressability.  (See Motion at 8:16-19.)  Redressability requires that it be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  See Lujan, 504 U.S. at 561 (quoting Simon, 426 U.S. at 38, 43, 96).  Here, plaintiffs seek from OFM not only an accounting and restitution but also disgorgement of profits and damages.  (See 4AC, Prayer for Relief ¶¶ 3-7.)  There is a likelihood that these

---

[7] In so ruling, the Court does not reach OFM's additional argument, essentially a factual attack on standing, that OFM is a separate legal entity from its provinces, specifically, a separate "juridic person" under Italian as well as Canon law, and, as such, may not be held liable for the acts of its provinces.  (See Decl. of Settimio Carmignani Caridi ¶¶ 58-61.)  Assuming such law is relevant, the evidence submitted by OFM in support thereof is not of a nature clearly subject to judicial notice.  See, e.g., White, 227 F.3d at 1242 ("With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.").

8

1 two additional forms of relief, and, in particular, damages, will redress plaintiffs' asserted
injuries, if liability is shown.[8]

### 4. Summary with Respect to Constitutional Standing Requirements

In sum, seventeen plaintiffs have failed to allege an injury in fact, four plaintiffs have failed to allege their property became part of the Ustasha Treasury, and all plaintiffs have failed to allege the requisite causal connection between their asserted injuries and the conduct of OFM. Accordingly, with the exception of redressability, the individual plaintiffs have failed to adequately allege the minimum constitutional requirements necessary to establish standing. See Lujan, 504 U.S. at 560.

## B. Prudential Principles Regarding Individual Plaintiffs' Standing

### 1. Zone of Interests

With respect to the prudential principles relevant to the question of standing, OFM first argues that plaintiffs' complaint does not fall within the "zone of interests" protected by the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, or by the federal question statute, 28 U.S.C. § 1331.[9] A "plaintiff's complaint must 'fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" See Individuals for Responsible Gov't, Inc. v. Washoe County, 110 F.3d 699, 703 (9th Cir. 1997) (quoting Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 475 (1982)). In determining whether a plaintiff's complaint meets

---

[8] OFM argues plaintiffs' restitution claim is not redressable because the Treaty of Peace with Italy precludes recovery in this forum. The redressability requirement addresses whether the relief sought is likely to redress the asserted injury, however, not whether plaintiffs can prove entitlement to such relief. See Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 75 n.20 (holding a plaintiff must show "a 'substantial likelihood' that the relief requested will redress the injury claimed"); see also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton, 422 F.3d 490, 501 (7th Cir. 2005) ("Redressability . . . depends upon the relief requested, not the relief [the plaintiff] could prove it was entitled to on the merits.").

[9] The ATS provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." See 28 U.S.C. § 1350. The federal question statute provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331.

the "zone of interests" requirement, the court must consider the "substantive statute whose duties the plaintiff [is] seeking to enforce." See Cetacean Community v. Bush, 386 F.3d 1169, 1177 (9th Cir. 2004); see also Bennett v. Spear, 520 U.S. 154, 175 (1997) ("In determining whether the petitioners have standing under the zone-of-interests test to bring their [Administration Procedure Act] claims, we look not to the terms of the [Endangered Species Act's] citizen-suit provision, but to the substantive provisions of the [Endangered Species Act], the alleged violations of which serve as the gravamen of the complaint.").

The ATS and federal question statute do not, however, confer any substantive rights; they merely provide the court with jurisdiction to hear certain matters. See Sosa v. Alvarez-Machain, 542 U.S. 692, 724 (2004) (holding "the ATS is a jurisdictional statute creating no new causes of action")[10]; see also Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 249 (1951) ("The Judicial Code [§ 1331], in vesting jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions."). OFM makes no argument with respect to the "zone of interests" test as applied to plaintiffs' substantive claims, specifically "common law property claims." See Alperin v. Vatican Bank, 410 F.3d 532, 539 (9th Cir. 2005). Consequently, OFM has failed to show plaintiffs' claims fall outside the relevant "zone of interests."[11]

### 2. Generalized Grievances

OFM next asserts that plaintiffs fail to meet the prudential standing requirements because claims based on OFM's alleged assistance to the Ustasha Regime constitute "generalized grievances." (See Mot. at 11.) Courts ordinarily will refrain "from adjudicating

---

[10] In interpreting Sosa, plaintiffs cite to Sarei v. Rio Tinto, PLC, 456 F.3d 1069 (9th Cir. 2006). The Ninth Circuit, however, has withdrawn such opinion and granted rehearing en banc. See Sarei v. Rio Tinto, PLC, 499 F.3d 923 (9th Cir. 2007).

[11] To the extent OFM argues that the violations alleged by plaintiffs, i.e., "garden-variety . . . claims for the recovery of property," (see Motion at 11:6-8 (citing Alperin, 410 F.3d at 548)), are not the types of claims permitted to be brought under the ATS, (see id. at 10:23-11:8), the argument does not go to the question of standing. Such argument may, however, be raised by separate motion.

10

1  'abstract questions of wide public significance' which amount to 'generalized grievances,'
2  pervasively shared and most appropriately addressed in the representative branches." See
3  Valley Forge Christian Coll., 454 U.S. at 475 (quoting Warth, 422 U.S. at 499-500).  Here,
4  as OFM concedes, however, plaintiffs allege "a variety of individualized property losses."
5  (See Motion at 11:13-14.)  Consequently, to the extent plaintiffs have sufficiently alleged
6  personalized injuries, they are not seeking adjudication of generalized grievances.

### 3. Third Party Rights

Finally, OFM argues that a majority of the individual plaintiffs are not asserting their own legal rights, but rather "those of relatives who were allegedly the victims of looting by Ustasha and other actors." (See Motion at 11:21-22.)  Generally, a party must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  See Warth, 422 U.S. at 499.  As previously discussed, five of the individual plaintiffs allege the loss of their own personal property, (see 4AC ¶¶ 45-48, 59), and two of the individual plaintiffs allege they are the sole heirs of decedents whose property was looted, (see id. ¶¶ 49, 65); the remaining seventeen individual plaintiffs assert property rights of family members or relatives. Consequently, only seven individual plaintiffs are asserting their own legal rights and interests and the remaining seventeen individual plaintiffs are asserting the rights of third parties.

### 4. Summary

Although the individual plaintiffs have, to some degree, satisfied the prudential principles regarding standing, such plaintiffs nonetheless have failed to satisfy the minimum constitutional standing requirements, as set forth above.  Accordingly, OFM's motion to dismiss the individual plaintiffs' claims against OFM, for lack of standing, will be GRANTED.

### C. Associational Plaintiffs' Standing

OFM's next argument is that the associational plaintiffs lack standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

11

1 requested requires the participation of individual members in the lawsuit." Hunt v.
2 Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

3       The complaint sufficiently alleges that each associational plaintiff has members who
4 have suffered an injury in fact: "All organizational plaintiffs have, and represent, members
5 whose property was looted by the Ustasha, deposited in the Ustasha Treasury and
6 converted or retained by defendants." (See 4AC ¶ 44.) As previously discussed, however,
7 the complaint fails to allege the requisite causal connection between the actions of OFM
8 and the injury suffered. Accordingly, the associational plaintiffs have failed to sufficiently
9 plead that any of their "members would otherwise have standing to sue in their own right."
10 See Hunt, 432 U.S. at 343.

11       OFM also argues that plaintiffs have "fail[ed] to allege that the interests this suit
12 seeks to vindicate are germane to the purpose of any of these organizations." (See Motion
13 at 13:8-9.) Specifically, OFM argues that plaintiffs have failed to "indicate what the specific
14 purpose of these organizations in fact might be." (See id. at 13:9-10.) "[C]ourts have
15 generally found the germaneness test to be undemanding." Presidio Golf Club v. Nat'l Park
16 Serv., 155 F.3d 1153, 1159 (9th Cir. 1998); see also Garcia v. Spun Steak Co., 998 F.2d
17 1480, 1484 (9th Cir. 1993) ("[I]t is clear that the employees' interest in the conditions of the
18 workplace is germane to Local 115's purpose as the collective bargaining agent of the
19 employees").

20       Plaintiff Ukraine Organization of Ukrainian Antifascist Resistance Fighters is alleged
21 to be "an official representative of 8,500 former partisans and resistors of the Nazi
22 occupation of Ukraine and concentration camp victims"; its membership, according to the
23 complaint, "includes some victims of the Croatian occupying forces in Ukraine." (See 4AC
24 ¶ 69.) Plaintiff Ukrainian Union of Nazi Victims and Prisoners is alleged to "represent over
25 300,000 former slave and forced laborers, prisoners, concentration camp, and ghetto
26 survivors," including "some victims of the Croatian occupying forces in Ukraine." (See id. ¶
27 70.) Plaintiff Jasenovac Research Institute alleges it is "a human rights organization and
28 research institute . . . committed to establishing the truth about the Holocaust in

12

Yugoslavia, dedicated to the search for justice for . . . Ustasha persecution against Serbs, Jews, and Romas" and whose "membership includes Serbs, Jewish, and Roma Holocaust survivors of the Ustasha terror." (See id. ¶ 71.) Plaintiff International Union of Former Juvenile Prisoners of Fascism alleges it "represents Nazi victims in the former Soviet Union," including "some victims of the Croatian occupying forces in the former Soviet Union," (see id. ¶ 71), and plaintiff The Republic of Serbian Krajina in Exile alleges it "represents the interests of all Serb, Jewish, and Roma Holocaust Survivors from Krajina, Western Srem, Baranja and Slavonia,"[12] (see id. ¶ 73).

Each organization, as alleged, has an interest in abuses committed by the Ustasha during the Holocaust. The associational plaintiffs need not allege that their interests in this action are germane to an express purpose of such organizations. See, e.g., Presidio Golf Club, 155 F.3d at 1159 (holding club's interests need not be included in club's stated purpose for said interests to meet requirement that interests be germane to club's purpose). Accordingly, plaintiffs have sufficiently alleged that the interests they seek to protect in this action are germane to each associational plaintiff's purpose.

Lastly, OFM argues that participation of individual members is necessary because plaintiffs have requested monetary damages. An associational plaintiff's request for equitable relief, such as declaratory or injunctive relief, does not require individualized proof, and, consequently, is not a bar to standing. See, e.g., Associated General Contractors v. Metropolitan Water District of Southern California, 159 F.3d 1178, 1181 (9th Cir. 1998). An associational plaintiff lacks standing to seek monetary relief, however, because such claims would require individual members to participate in the lawsuit. See, e.g., United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am., 919 F.2d 1398, 1399-1400 (9th Cir. 1990) (holding association's suit for damages for its members' lost wages required individualized proof by association's members). To the

---

[12] Plaintiffs allege that "[t]he Ustasha previously committed atrocities against Serbs, Jews, and Roma" in Krajina and Slavonia from 1941 until 1945 when such regions were part of the NDH. (See 4AC ¶ 73.)

13

extent the associational plaintiffs assert claims for which they are seeking monetary damages, specifically, conversion, unjust enrichment, and restitution, the associational plaintiffs lack standing with respect to such claims.

In sum, although each of the associational plaintiffs is seeking to protect interests germane to its purpose, and, to the extent each such plaintiff seeks equitable relief, the participation of its individual members is not required, plaintiffs, as discussed above, have not adequately alleged the individual members would have standing to sue in their own right.

Accordingly, OFM's motion to dismiss the associational plaintiffs' claims against OFM, for lack of standing, will be GRANTED.

## CONCLUSION

For the reasons set forth above, OFM's motion to dismiss the claims asserted against OFM for lack of standing is hereby GRANTED, and all claims against OFM are hereby DISMISSED, with leave to amend. Any amended complaint shall be filed no later than 30 days from the date of this order.

**IT IS SO ORDERED.**

Dated: February 21, 2008

MAXINE M. CHESNEY
United States District Judge